## FORSYTH v. DALLAS JOINT STOCK LAND BANK OF DALLAS.
### No. 11596.

Court of Civil Appeals of Texas. Dallas.
March 16, 1935.

Rehearing Denied April 13, 1935.

Olin E. Nesmith and P. C. Fewell, both of Dallas, for appellant.

Renfro & McCombs, of Dallas, for appellee.

BOND, Justice.

The Dallas Joint Stock Land Bank of Dallas instituted this suit in a district court of Dallas county to recover the balance due on a promissory note and to foreclose a deed of trust lien against 478 acres of land in Denton county, Tex. The petition alleges that the note and deed of trust had been executed, along with the other defendants, by James W. Forsyth, as guardian of Burl A. Forsyth, the appellant, and Robert T. Forsyth, as administrator with will annexed of the estate of J. A. Forsyth, under proper orders of the probate court of Dallas county. All parties who had signed the note, deed of trust, and who had an interest in the land were made parties to the suit and served with citation. All except the appellant permitted judgment to go against them by default.

The appellant, whose guardian had signed the note and deed of trust, had attained his majority prior to the institution of the suit, filed answer, setting up that he was the owner in fee of one-half undivided interest in the real estate involved; that he was not indebted to the plaintiff, had not executed any written instrument promising to pay the debt sued on or to convey any right he had in the land; that, if James W. Forsyth, as guardian of his estate, executed any promissory note, or any instrument attempting to grant, sell, convey, or mortgage the real estate described in plaintiff's petition, by which the guardian attempted to bind his ward or to convey his ward's interest in the land, in trust for the payment of such debt, they were attended by such fraud as to ineffectually create an obligation or lien on his estate.

The facts as stated in appellant's defense may be analyzed as follows:

On the 5th day of August, 1925, the will of one J. A. Forsyth was admitted to probate by the probate court of Dallas county, under the terms of which he devised the property involved in this suit and made provisions for the payment of his debts.

The essential paragraphs of the will are as follows:

"First: I desire and direct that my body be buried in a decent and Christian like manner, suitable to my circumstances and condition in life.

"Second: I desire and direct that all of my just debts and funeral expenses shall be paid by my executrix hereinafter named out of my estate as soon as practicable after my death.

"Third: I give and bequeath to my daughter, Anna Ellis, wife of Fred Ellis, Five Dollars and no more. The same to be paid by my Executrix hereinafter appointed.

"Fourth: After the payment of all my just debts and funeral expenses and the special bequest mentioned in the third paragraph hereof, I give and bequeath to my sons, James W. Forsyth, Robert T. Forsyth, and Arthur D. Forsyth, in equal portions, 117½ acres of land situated in Collin County, Texas, the same being out of the George B. Pilant Survey, on the waters of Wilson Creek about 3½ miles South East from the City of McKinney. Also 80 acres of land situated in ——— County, New Mexico. Also two shares of stock formerly known as Texas Traction Company stock, but now known as Texas Electric Railway stock. To have and to hold unto them the said James W. Forsyth, Robert T. Forsyth, and Arthur D. Forsyth, their heirs and assigns, forever, in fee simple, to use and enjoy, sell and convey in any way they see fit absolutely and unconditionally.

"Fifth: I give and bequeath to my wife, Lou Ida Forsyth, during her natural life or so long as she remains my widow, all of my land situated in Denton County, Texas, the first tract being fully set out and described in deed from A. W. Robinson to J. A. Forsyth and Hatton Andrews bearing date March 27th, 1903, and recorded in Book 87, Page 585, of Deed Records for Denton County, Texas, the second tract being fully set out and described in a deed from N. H. Rector and wife to Forsyth & Andrews bearing date May 11, 1903, and recorded in Book 86, Page 282, of Deed Records for Denton County, Texas, the third tract fully set out and described in a deed from W. M. England and wife to J. A. Forsyth bearing date January 18, 1907, and recorded in Book 101, Page 203, of Deed Records for Denton County, Texas. The fourth tract is fully set out and described in a deed from M. L. Stover, et al. to J. A. Forsyth bearing date April 30, 1914 and recorded in Book 138, Page 305, Deed of Records for Denton County, Texas. Said four tracts of land aggregating about 465 acres, to live upon, use, occupy and enjoy as her home. I also give and bequeath to my wife the said Lou Ida Forsyth, Fifty head of cattle, one horse and buggy, four span of work mules, and all farming utensils necessary for operating said farm; and she shall also have a sufficient number of hogs for her maintenance and support from year to year during her widowhood or natural life. And out of the revenue arising from the operation of said farm said wife is to maintain and educate my son, Burl A. Forsyth. To have and to hold unto her said Lou Ida Forsyth, during her natural life time or so long as she remains my widow, the above described property. Should my wife, the said Lou Ida Forsyth, marry again then all of said property hereinabove mentioned, whether the same be real, personal or mixed shall pass to and vest absolutely to my children hereinafter named.

"Sixth: It is my will and desire and I here now so direct that upon the death of my said wife or at the time she ceases to remain my widow, that the title to the property bequeathed in the Fifth paragraph of this Will, shall pass to my children as follows: My son, Burl A. Forsyth, shall take absolute title to one-half of said property, to use and enjoy the same unto him and his heirs and assigns forever, in fee simple. My sons, James W. Forsyth, Robert T. Forsyth, and Arthur D. Forsyth, shall take the absolute title in equal portions, to use and enjoy the same unto them, their heirs and assigns forever, in fee simple, to the other half of said property.

"Seventh: It is my will and desire and I so direct that should any cattle or work stock of any description of which I may die seized and possessed remain other than that specifically set out hereinabove in paragraph fifth be sold, and the proceeds arising from the sale of said personal property be applied to the payment of any debts or debt with which my estate may be properly chargeable, and that the remainder, if any, pass to and vest in my children hereinabove designated in paragraph sixth in the same proportion.

"Eighth: I hereby constitute and appoint my wife, Lou Ida Forsyth, Executrix of this my last Will and Testament, and direct that no bond or security be required of her as such. And it is my will and desire and I do so direct that no other action shall be had in the County Court or in any other Court in the administration of my estate than to prove and record this Will, and return an inventory and appraisement of my estate and list of claims."

The named executrix, Lou Ida Forsyth, declined to act as executrix under the will and elected against the will, and on August 5, 1925, Robert T. Forsyth, a devisee under the will, offered the will for probate and was appointed administrator with the will annexed, and soon thereafter James W. Forsyth, another devisee, was appointed guardian of the estate of Burl A. Forsyth, then a minor 15 years of age. On March 19, 1927, the guardian made application to the probate court for approval of a pro rata allowance claim alleged to be due and owing to the administrator, reciting therein that the minor and his estate of inheritance under the will of J. A. Forsyth was indebted to the estate of J. A. Forsyth in the sum of $2,579.40, and further reciting that "the amount was estimated and agreed upon by James W. Forsyth, guardian, and Robert T. Forsyth, administrator, subject to a hearing and proof thereon by the Probate Court," and being one-third of a claimed indebtedness of J. A. Forsyth, deceased, due to various parties in sundry amounts. The application recited that such debts were directed to be paid by the terms of the will of J. A. Forsyth before a distribution of his property.

Appellant further contended that the inventory of all claims due and owing by the estate of J. A. Forsyth, deceased, appearing of record in the administration proceedings, did not include any of the items set out in the guardian's pro rata allowance claim, had

never received the sanction of the probate court of Dallas county as a claim against the estate of J. A. Forsyth, and was fraudulently asserted as an indebtedness due by the minor and his estate of inheritance; and, further, that the probate court's approval of the pro rata allowance claim in the sum of $2,579.40 against the minor's estate is a void order, one not authorized under the terms of the will, and is based on fraudulent deception of the administrator and the guardian, in order to relieve themselves and their estates of inheritance debts which were chargeable to them and their gifts under the will of J. A. Forsyth.

On the trial of the cause, appellee introduced in evidence: (1) Letters of guardianship showing the appointment and qualification of James W. Forsyth as guardian of the person and estate of Burl A. Forsyth, a minor; (2) application of the guardian for permission to procure a loan of $2,500 to pay a pro rata allowance claim of the general indebtedness of J. A. Forsyth, deceased, and to secure it by a pledge of the minor's land for the payment thereof. The application recites the roll of the probate proceeding in the administration, as the basis for the claim; (3) order of the probate court of Dallas county granting the guardian permission to procure a loan and bind the estate of said ward by a mortgage or deed of trust in an amount of not to exceed $5,000, drawing interest at the rate of 6 per cent. per annum and for a maturity period of 33 years; (4) report of the guardian showing that a loan had been procured from the Dallas Joint Stock Land Bank of Dallas not to exceed $5,000, of which only $2,500 was to be used for the benefit of the estate of the minor, and bearing 6 per cent. interest per annum; (5) order of the probate court confirming the loan; (6) note of $5,000, dated April 15, 1927, providing for 6 per cent. interest, payable in 65 equal semiannual payments, and 10 per cent. attorney's fees, and providing that, in case of default in the payment of any installment when due, the holder may declare the note due and collect 8 per cent. interest. The note was executed along with others by Robert T. Forsyth, administrator of the estate of J. A. Forsyth and James W. Forsyth, guardian of the estate of Burl A. Forsyth; and (7) a deed of trust conveying to H. W. Ferguson, trustee, for the use and benefit of the Dallas Joint Stock Land Bank of Dallas, the entire 478 acres of land in Denton county, and given to secure the payment of the note, interest, and attorney's fees. The deed of trust recites that the land conveyed "being the same land

devised to Burl A. Forsyth, James W. Forsyth, Robert T. Forsyth and Arthur D. Forsyth, by Will of J. A. Forsyth, deceased, dated April 3, 1917, shown of record in Vol. N, Page 127, Will Records of Dallas County, Texas, in cause No. 10351, Estate of J. A. Forsyth, deceased, County Court of Dallas County, Texas," and further recites that "the proceeds of this loan is being advanced to pay off claims and indebtedness existing against the estate of J. A. Forsyth, deceased; and also claims against the estate of Burl A. Forsyth, a minor, as administered by the Probate Court of Dallas County, Texas."

At the conclusion of appellee's testimony, the court declined to permit the appellant to introduce evidence of his defense on the theory that such was a collateral attack on the orders and judgments of the probate court. Subsequently, the court peremptorily instructed the jury to return a verdict in favor of the plaintiff, and rendered judgment against appellant and all the makers of the note for the sum of $5,912, balance due on the principal, interest, and attorney's fee, together with 8 per cent. interest per annum from the date of the judgment, and with a foreclosure of the deed of trust lien on the entire tract of land. This appeal is perfected by Burl A. Forsyth alone.

Appellant, by appropriate assignments, challenges the action of the trial court in refusing to permit him to introduce the will of J. A. Forsyth, deceased, and the roll of the probate proceedings in the administration of the estate of J. A. Forsyth, deceased.

It must be conceded that the probate court, within the scope of the powers conferred on it by law, respecting the estates of minors, is a court of general jurisdiction. Its orders, therefore, respecting a subject-matter coming within the scope of these powers, are presumptively valid and cannot be collaterally attacked, unless the record affirmatively show an unauthorized exercise of this jurisdiction in the particular case. Weems v. Masterson, 80 Tex. 45, 15 S. W. 590; Martin v. Robinson, 67 Tex. 368, 374, 3 S. W. 550.

Article 4102, R. S. 1925 (amended Acts 40th Leg. c. 179, p. 257 [Vernon's Ann. Civ. St. art. 4102]), provides: "The county court shall appoint guardians of minors, persons of unsound mind and habitual drunkards, and other persons where it is necessary that a guardian be appointed to receive funds or money due such persons from the Federal Government, settle accounts of guardians, and transact all business appertaining to the estates of minors, persons of unsound mind,

habitual drunkards, and other persons for whom a guardian is appointed."

The appointment and legal status of James W. Forsyth as the guardian of the person and estate of appellant is not questioned, and article 4195, in so far as pertinent, reads: "When the income of the ward's estate, and the personal property thereof, and the proceeds of previous sales, are insufficient for the education and maintenance of the ward, or to pay the debts against the estate, the guardian, or any person holding a valid claim against the estate, may, by written application to the court in which such guardianship is pending, ask for an order for a sufficient amount of real estate to be sold to make up the deficiency, or when the property of the ward consists in whole or in part of an undivided interest in real estate and the guardian believes it to be the best interest of the estate of the ward to sell such real estate, he may, by written application to the court in which such guardianship is pending, ask for an order for such real estate to be sold; or when the real estate of such minor is encumbered by a valid lien to secure a debt which is due or is about to become due, or when the taxes are due on the property of said ward, or when the holder of such debt has applied for or is threatening to apply for an order of sale of the real estate of the minor and the guardian has not in his hands sufficient funds to pay such debts, such guardian may by written application to the court in which such guardianship is pending, apply in writing for an order to obtain an extension of such debt and to secure the same by a mortgage or deed of trust on the real estate of such minor; or if the real estate of such minor or any part thereof is not revenue producing, or the revenue therefrom could be increased by making improvements or additional improvements or repairs thereon, such guardian may make a written application to such court to make such improvements or repairs on such real estate as he may deem beneficial to the ward, and to secure the payment for the same by mortgage, deed of trust, mechanics contracts and material men lien."

From the above-recited statutes, it seems evident that the probate court has been given express authority to entertain an application of the guardian or any person holding a valid claim against the minor's estate to encumber the ward's estate and to secure the payment by mortgage and deed of trust. A valid claim, therefore, is one of the prerequisites for the exercise of the jurisdiction of the probate court to entertain such application and to encumber the ward's property.

It may be seen by reference to our analysis and summary of appellant's defense that an attack was made on the validity of the claim of the administration of the estate of J. A. Forsyth and the exercise of the jurisdiction of the probate court in approving the pro rata allowance claim by the guardian, and the inquiry was directed and centered on evidence disclosed by the record that the claim for which appellant's real estate was encumbered and of which appellee had notice was one which had been created and agreed upon by a fraudulent combination of Robert T. Forsyth as administrator and James W. Forsyth as guardian, and against the will of J. A. Forsyth.

The will of J. A. Forsyth, deceased, and the roll of the administration proceedings being the indicia of the note and deed of trust involved in this suit, appellee cannot escape the conclusion that it was chargeable with notice of the terms of the will and the extent and limitation of the probate court over the testator's estate, and take notice that the administrator nor the guardian nor the probate court could legally change or alter the testator's scheme in the disposition of his property and the direction for the payment of his debts.

The appellant's attack on the claim as being fraudulently procured by the administrator and guardian, both personally interested in the affirmative result of the probate court in making the orders, must be assumed by this court to be true, and that the instrument recited in the record is the will of J. A. Forsyth, duly probated; therefore the fraudulent combination of James W. Forsyth, the guardian, and Robert T. Forsyth, the administrator, in procuring the orders of the probate court and construction of the will of J. A. Forsyth, calls for the exercise of the jurisdiction of a district court.

In construing a will, the universal rule of law is that a construction must be given which will effectuate the real intent of the testator, as expressed in the instrument as a whole, and as it was made at the time, in the light of the circumstances surrounding the execution thereof. Thus it may be seen, by reference to the will, a life estate (section 5) is created in his wife, Lou Ida Forsyth, in the land involved in this suit and the personal property therein described, subject to be defeated on the happening of her death or marriage, with gift over on death or marriage, one-half to Burl A. Forsyth and one-half in equal proportion to James W. Forsyth, Robert T. Forsyth, and Arthur D. Forsyth; that the payment of his debts (section 7) is directed to

be paid out of the sale of personal estate not therein specifically devised, and further (section 4) directs that, "after the payment of all my just debts and funeral expenses and the special bequest mentioned in the third paragraph," the real estate and personal property described in that paragraph of the will to vest in fee to James W. Forsyth, Robert T. Forsyth, and Arthur D. Forsyth in equal proportion. Evidently it was the intention of the testator, in effectuating a life tenure in the wife and directing the revenues derived from the land to be chargeable with the maintenance and education of the minor son, Burl A. Forsyth, and the devise was set aside to her free of debts. This intention is further accentuated in the making of the special bequest to the three sons, in section 4, charging their gifts with the payment of his debts, and, further, in section 7, directing the payment of his debts out of the sale of personal property not therein specially devised. It is apparent, we think, that the testator intended that these legacies should be charged with the debts and the courts will give effect to such intention.

A direction to pay debts out of specified property, or to pay debts followed by a devise, is a direction to pay out of those estates before resorting to their payment out of a devised life estate chargeable with the maintenance and education of a minor child. Thus, under the terms of the will, we think the debts of the testator were directed first to be paid out of personal property chargeable therewith, and then out of the gift to the sons; James W. Forsyth, Robert T. Forsyth, and Albert D. Forsyth, and that the land and personal property creating the trust estate controlled by the executrix during her life in the manner indicated in the will was not chargeable with the payment of the debts. The district court, being a court of general jurisdiction, should not permit the purposes and scheme of the testator to fail.

Furthermore, the facts presented in this record, assuming same to be true, are sufficient, we think, to raise the issue of a fraudulent combination between the administrator, Robert T. Forsyth, and the guardian, James W. Forsyth, in procuring the approval of the pro rata allowance claim against the minor's estate, to authorize a court of equity to uphold the purpose and scheme of the testator; that a court of equity has this power there can be no question. The fraud which calls it into operation occurring in procuring orders in probate through which the loan and deed of trust were directed to be made and confirmed and the record incident thereto bearing evidence of that fact is not a collateral attack on such probate proceedings, but a direct effort to vacate the loan and deed of trust which could be done when fraud was perpetrated, and which the holder of the note and deed of trust had notice.

The obvious purpose of appellant's defense was to cancel appellee's note and deed of trust, which were executed in pursuance of the proceedings in the probate court and to remove from his title the cloud cast thereon by the lien. These proceedings in the probate court and every order and decree relating to the procurement of the pro rata allowance claim, the note and deed of trust sued upon, are specifically urged in the defense, and, in effect, is averred to be fraudulent and void.

Mr. Freeman in his work on Judgments, and which is quoted with approval by our Supreme Court in the case of Johnston et al. v. Stephens et al., 121 Tex. 374, 49 S.W.(2d) 431, 436, states:

" 'With the possible exception of probate of wills, a court of equity may in the exercise of its general equitable jurisdiction grant relief from the probate orders and decrees upon the same grounds and conditions as from the judgments of other courts. Equity may compel restoration of lands or property fraudulently acquired in probate proceedings. The fact that the probate court is accorded exclusive jurisdiction in the first instance does not, at least with respect to most of its orders, differentiate it from any other court possessing exclusive jurisdiction over matters entrusted to it. Nor is the general rule abrogated by statutes purporting to make decrees and orders of courts of probate conclusive, since they merely place the determinations of these courts on the same footing as the judgments of other courts without interfering with the power of equity in proper cases to give relief from them. Sometimes statutes specifically provide for equitable relief, as for mistakes in final settlement of accounts, but statutory authority is not necessary in such cases.

" 'The general rule has been applied to various orders and decrees, such as those appointing or discharging administrators, or settling the accounts of personal representatives and guardians, orders approving claims, orders of sale, orders setting apart a homestead, and decrees of distribution.

" 'But in all these cases equity may be resorted to only upon a sufficient showing of some ground for the exercise of equitable jurisdiction such as mistake or extrinsic fraud, and not merely to review the action of the probate court. "The courts of chancery have no power to take such cases out of probate

courts for the purpose of proceeding with the administration. But their power and functions to relieve against fraud, accident and mistake, or impending irremediable mischief is universal, extending over suitors in all of the courts." The fraud which will justify equitable relief against probate orders or judgments must, of course, be extrinsic.' "

. We believe that appellant should have been permitted to present its action against appellee's suit, and to show that appellee had notice of the fraudulent combination between the administrator and the guardian to relieve themselves and their property in part from the payment of testator's debts. We do not think the rule on the subject of collateral attack has any application to this litigation, and the court erred in its action refusing appellant the right to interpose the defense.

■ The refusal of the executrix, Lou Ida Forsyth, to take under the will, and the relinquishment of her life estate to the legacy with gift over to the minor and the other named sons, will not defeat the testamentary scheme as to the payment of the debts. Her election against the will has the effect of accelerating the remainders limited to take effect on death or marriage. The election of the widow was in law equivalent to her death or marriage. Munger v. Munger (Tex. Civ. App.) 298 S. W. 470.

■■ It will be noticed by reference to appellee's evidence that the guardian's application for the procurement of the loan on his ward's estate, and the orders granting and confirming the same, the amount, terms, and conditions, were directed to be for the sum of $2,500, bearing 6 per cent. interest for a period of 33 years, and appellant's property be pledged as security for its payment. The judgment rendered by the court against the guardian, and directed against the appellant personally, is for the sum of the balance due on a $5,000 loan, bearing 8 per cent. interest from maturity and 10 per cent. additional as attorney's fees, and for a foreclosure of the deed of trust lien on appellant's property to satisfy the judgment. Manifestly, the judgment is more onerous than appellee's pleading and evidence will warrant. Appellant is not personally liable for the payment of the note, except to the extent of the value of his inheritance chargeable with the payment of the debts, and then only to the amount authorized to be made and confirmed by the probate court. However, the assignment of error based on the ground of excessive amount in judgment would not authorize this court

to reverse and remand the cause, as such errors come within the power of appellate courts to reform judgments thus pronounced; but, for other reasons above stated, we concluded the judgment of the lower court as to appellant should be reversed and the cause remanded, and it is so ordered.

Reversed and remanded.