# IN THE COURT OF APPEALS OF IOWA

No. 13-1422
Filed October 15, 2014

**PAMELA J. MOHR,**
    Plaintiff-Appellant/Cross-Appellee,

**vs.**

**JONATHON LANGERMAN and**
**JOAN MOHR,**
    Defendants-Appellees/Cross-Appellants.
_____

Appeal from the Iowa District Court for Osceola County, Carl J. Petersen,

Judge.


A surviving spouse appeals from the denial of her petition for declaratory

judgment seeking to declare the decedent's biological son is not an heir.  The

son cross-appeals the denial of his motion for summary judgment.  **AFFIRMED**

**ON BOTH APPEALS.**


Andrea M. Smook and Stephen F. Avery of Cornwall, Avery, Bjornstad &

Scott, Spencer, for appellant Pamela Mohr.

Donald Molstad, Sioux City, for appellee Joan Mohr.

Andrew B. Howie of Hudson, Mallaney, Shindler & Anderson, P.C., West

Des Moines, Kevin Murray, Sac City, and John M. Sandy, Spirit Lake, for

appellees Jonathan and Amy Langerman.


Heard by Potterfield, P.J., and Tabor and Mullins, JJ.

**MULLINS, J.**

A surviving spouse appeals from the district court's denial of her petition for declaratory judgment. She seeks a declaration that the decedent's biological son is not an heir under Iowa Code section 633.222 (2011). The biological son appeals from the denial of his motion for summary judgment, contending he established his heirship. In deciding these appeals, we must determine whether establishing heirship under Iowa Code section 633.222 requires proof of both paternity and recognition. We must also determine whether the surviving spouse or the biological child listed as an heir in the probate inventory bears the burden of proof, what the burden is, and whether the burden was met in this case.

We conclude Iowa Code section 633.222 demands proof of both paternity and recognition to establish heirship. We further find the surviving spouse had the burden to prove by clear and convincing evidence the declaration she was seeking, and she did not meet the burden. We affirm.

## I.      BACKGROUND FACTS AND PROCEEDINGS.

Jerry Mohr, a resident of Arizona, died intestate in August 2011. At the time of his death, Jerry was married to Pamela Mohr, the plaintiff in this action. They were married in 1986 and remained married until his death. They lived in Scottsdale, Arizona during the first part of their marriage.

In 1994, Jerry engaged in planned sexual relations with Amy Langerman for the express purpose of conceiving a child. Amy had already had a child conceived in this manner with a different man. On December 25, 1994, Amy gave birth to Jonathan Langerman, the defendant in this action. In 1996, Jerry

moved to Flagstaff, Arizona, and thereafter maintained infrequent phone contact with both Pamela and Amy. Sometime in 2000, Jerry began living with Beth Cairns and helping to raise her son from another relationship. He lived with her until his death in August 2011.

Amy had moved to California and did not learn of Jerry's death for several months. Upon learning of his death, she filed a petition in an Arizona probate court to establish paternity of Jerry Mohr as the father of Jonathon, then a minor. Based on DNA evidence, and with no objection by Pamela, the Arizona court determined that Jerry was the father of Jonathon and ordered Jonathon's birth certificate amended to so reflect.

At the time of his death, Jerry owned a one-half interest in 160 acres of farmland in Osceola County, Iowa. This land is the subject of ancillary administration in Osceola County.[1] Based on the establishment of paternity in Arizona, the Iowa estate's personal representative, Joan Mohr, Jerry's sister-in-law, filed a probate inventory listing Jonathan as an heir to the Iowa estate.

Pamela filed in Iowa district court a petition for declaratory judgment seeking a declaration that, under Iowa probate law, Jonathan was not an heir to Jerry Mohr.[2] Jonathan filed a motion for summary judgment based on the

---

[1] *See* Iowa Code §§ 633.500-.504.

[2] At the time of her initial filing in Arizona, Amy Langerman filed on behalf of Jonathan, who was still a minor. In the present case, Pamela's petition for declaratory judgment identified the defendants as, Joan Mohr, the administrator, Jonathan Langerman, and Amy Langerman his mother. Jonathan has since turned eighteen years of age and is no longer a minor. Mohr voluntarily dismissed Amy as a defendant. Therefore, Joan Mohr and Jonathan Langerman are the remaining defendants in this action. Joan Mohr filed an answer to the declaratory judgment motion, but did not appear personally or through counsel at the trial.

Arizona paternity order finding Jerry was Jonathan's father. The district court granted partial summary judgment, finding that the Arizona order established paternity. However, the court denied summary judgment on the question of whether Jerry had recognized Jonathan as his son. The case proceeded to trial on that single issue. Following trial, the district court found Pamela failed to carry the burden to show Jerry did not recognize Jonathan, and found he was therefore an heir to the estate. Pamela appeals and Jonathan cross appeals.

## II.     STANDARD OF REVIEW.

A challenge to inheritance is tried in equity. *In re Estate of Evjen*, 448 N.W.2d 23, 24 (Iowa 1989). The applicable standard of review in cases tried in equity is de novo. Iowa R. App. P. 6.907. On appeal from denial of a motion for summary judgment, our review is for correction of errors of law. *Shriver v. City of Okoboji*, 567 N.W.2d 400 (Iowa 1988).

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Id.* The burden is on the moving party to show the nonexistence of material facts and to prove the party is entitled to judgment as a matter of law. *Knapp v. Simmons*, 345 N.W.2d 188, 121 (Iowa 1984). A genuine issue of material fact exists if evidence is such that a reasonable jury could return a verdict in favor of a nonmoving party. *Fees v. Mut. Fire & Auto. Ins. Co.*, 490 N.W.2d 55, 57 (Iowa 1992). To uphold the district court's summary judgment ruling, we must confirm that no disputed issues of material fact existed to render summary judgment inappropriate, and the district court correctly applied the law to those undisputed

facts. *Royce v. Hoening*, 423 N.W.2d 198, 200 (Iowa 1988). We view the facts in the light most favorable to the nonmoving party. *Shriver*, 567 N.W.2d at 400.

### III. ANALYSIS.

The parties raise numerous issues on appeal. Pamela appeals from denial of her petition for declaratory judgment arguing the district court wrongly placed the burden of proof on her and applied the wrong standard of proof. She further argues the evidence presented at trial met the appropriate standard of proof. Jonathan cross appeals from the district court's ruling on the motion for summary judgment that Iowa law applies in this case and that establishing heirship requires proof of both paternity and recognition. To resolve these issues, we must answer the following questions: (1) What state's law is applicable to the question of heirship as to Iowa real property? (2) Is proof of paternity alone sufficient to establish heirship under Iowa Code section 633.222? (3) When the probate inventory names a person as an heir, does the person challenging that designation bear the burden of proving that such person is not an heir? (4) If the challenger bears the burden of proof, what is the standard of proof for showing recognition under section 633.222? (5) Was that standard met here?

We find it most convenient to address Jonathan's cross-appeal issues first. Jonathan asserts the district court erred in failing to grant him summary judgment on all issues. He contends the court erred in finding (1) the Iowa laws of descent apply and (2) heirship requires proof of recognition as well as paternity.

**A.     What State's Law Is Applicable to the Question of Heirship?**

In its ruling on the motion for summary judgment, the district court found with respect to Osceola land, the Iowa laws of descent apply because the land is situated in Iowa.   Jonathan asserts, "The issue here is 'legitimacy' not paternity" and cites the Restatement (Second) Conflict of Law's rule governing legitimacy. This provides, "Whether a child is legitimate is determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the child and the parent."   Restatement (Second) Conflict of Laws § 287.   Jonathan urges the State of Arizona has the most significant relationship and our court should apply Arizona law to determine he is "legitimate."[3]

Despite his attempts to reframe the issue as one of "legitimacy," the questions in this action are as to the right to inherit land situated in the State of Iowa.   Inheritance rights are statutory.   Iowa Code section 633.222 sets out how a child may inherit from a biological father.   Further, the descent of real property is governed by the laws of the state wherein the land in situated, regardless of the domicile of the deceased.   *Whisler v. Whisler*, 88 N.W.2d 68, 70 (Iowa 1958); *In re Estate of Barrie*, 35 N.W.2d 658, 660-61 (Iowa 1949); *see also* 1 Sheldon F. Kurtz, *Kurtz on Iowa Estates*, § 7.9 (3d ed. 1995).   Accordingly, we apply Iowa law to the question of heirship in this appeal.

**B.     Is Proof Of Paternity Alone Sufficient To Establish Heirship?**

Iowa Code section 633.222 currently provides:

---

[3] Jonathan also makes an argument that the "law where the status was created" should govern in probate contests, citing a Montana case and a Minnesota case.

> Unless the child has been adopted, a biological child inherits from the child's biological father if the evidence proving paternity is available during the father's lifetime, or if the child has been recognized by the father as his child; but the recognition must have been general and notorious, or in writing. Under such circumstances, if the recognition has been mutual, and the child has not been adopted, the father may inherit from his biological child.

Jonathan contends that because the Arizona order established his paternity, proof of recognition is not required to establish his heirship, and the district court should have granted his motion for summary judgment. Jonathan adduces three arguments to support his position. First, he asserts the plain language of the statute provides only paternity *or* recognition is required, not both. Iowa Code section 633.222 does provide "a biological child inherits from the child's biological father if the evidence proving paternity is available during the father's lifetime, *or* if the child has been recognized by the father as his child." (Emphasis added.)

Our supreme court has, however, determined that a party claiming heirship pursuant to section 633.222 must show both paternity and recognition by the father. In *Evjen*, 448 N.W.2d at 23-25, the claimant sought a declaration that he was an heir when his biological father died only one week after discovering the claimant's mother was pregnant with the claimant. The claimant was able to prove paternity readily. *Evjen*, 448 N.W.2d at 24. The court stated

> We believe the evidence clearly establishes that [the decedent] is the father of [the claimant]. Proving paternity, however, is not enough to establish heirship under section 633.222. It must also be shown that the father 'recognized' the child as his own, a difficult matter to prove in this case because of the short time between conception and the father's death.

*Id.* The court ultimately found the father had recognized the child and declared the claimant was an heir. *Id.* at 26. Thus, the claimant was required to prove both paternity and recognition. The Iowa federal district court also has found both are required. In *Abkes v. Apfel*, 30 F. Supp. 2d 1149, 1154 (Iowa N.D. 1998), the federal court for Iowa's Northern District, citing *Evjen*, found a child was not entitled to Social Security survivor benefits where he failed to show adequate evidence of recognition. This court also has required paternity and recognition. In *In re Estate of Pena*, No. 12-0559, 2012 WL 5563116, at *1 (Iowa Ct. App. Nov. 12, 2012), an unpublished disposition, this court, citing *Evjen*, found a pair of brothers failed to prove by clear and convincing evidence that the alleged father recognized them.

Next, Jonathan argues that section 633.222 has been amended to provide for a new and different procedure for establishing inheritance rights such that biological children who prove paternity need not prove recognition. The Iowa legislature enacted section 633.222 in 1963 as part of their adoption of the Iowa probate code effective January 1, 1964, and amended it in 1986 and 1994. *See* Iowa Acts ch. 1086, §1; 1994 Iowa Acts ch.1046, §28. The 1963 act provided, in relevant part:

> **Sec. 222. Illegitimate child—inherit from father.** Unless he has been adopted, an illegitimate child shall inherit from his natural father when the paternity is proven during the father's lifetime or when the child has been recognized by the father as his child; but such recognition must have been general and notorious, or else in writing.

1963 Iowa Acts ch. 326, §222. The legislature amended section 633.222 in 1986, making the following changes:

> Unless the child has been adopted, an illegitimate child ~~shall inherit~~ inherits from the child's natural father ~~when~~ if the ~~paternity is proven~~ evidence proving paternity is available during the father's lifetime, or ~~when~~ if the child has been recognized by the father as his child; but ~~such~~ the recognition must have been general and notorious, or ~~else~~ in writing.

1986 H.F. 2252; 1986 Iowa Acts ch. 1068, §1. Thus, a biological child could prove paternity even after the death of the biological father, so long as evidence proving the paternity was available during the father's lifetime. In 1994, the legislature amended the section to its current form as quoted at the beginning of this analysis, removing the disfavored terms "illegitimate" and "natural," and replacing them with "biological." We note that the conjunction joining the paternity clause and the recognition clause throughout the development of this code section has been "or." This has not changed. Yet our case law determines that both paternity and recognition are required.

Prior to 1963, Iowa laws governing intestacy provided for inheritance by biological children in language nearly identical to the 1963 enactment—thus, the paternity clause and the recognition clause were joined by the conjunction "or."[4] It is significant that case law prior to 1963 addressing inheritance by biological children from a biological father also required proof of both paternity and recognition. For example, in *Robertson v. Campbell*, 147 N.W. 301, 301-02 (Iowa 1914), our supreme court found, under Iowa Code section 3385 (1897),[5] a biological child attempting to quiet title against the collateral heirs of the decedent

---

[4] *See* notes 5 and 6.
[5] Iowa Code section 3385 (1897) provides:

> They shall inherit from the father when the paternity is proven during his life, or they have been recognized by him as his children; but such recognition must have been general and notorious, or else in writing.

biological father was required to show both paternity and recognition. *See also Watson v. Richardson*, 80 N.W. 407, 409 (1899) (finding Iowa Code section 3385 (1897) required proof of both paternity and recognition, and claimant failed to make sufficient proof). In *Van Horn v. Van Horn*, 77 N.W. 846, 847 (Iowa 1899), our supreme court, citing Iowa Code section 2466 (1873),[6] found the claimant had to show paternity and recognition, and he had adduced sufficient evidence of both.

Thus, although the language of the statute providing for inheritance of biological children from biological fathers has always included the word "or" between the paternity clause and the recognition clause, it has also always been interpreted to require proof of both. Jonathan insists the 1986 amendment to section 633.222 was intended to address the preceding case law and alter it such that only one was required. However, *Evjen*, *Abkes*, and *Pena* were all decided after the 1986 amendment and are consistent with prior holdings that both are required. The 1986 amendment also simply provides a biological child can prove paternity *after* the deceased father's death and does nothing to alter the meaning of the conjunction "or" or the recognition clause that follows it. Thus the amendment is of no avail in Jonathan's argument. The language— specifically, the presence of "or"—has not changed since the inception of the code section providing for inheritance by biological children.

---

[6] Iowa Code section 2466 (1873) provides:
> They shall inherit from the father whenever the paternity is proven during the life of the father, or they have been recognized by him as his children, but such recognition must have been general and notorious or else in writing.

Finally, Jonathan argues his case is distinguishable from the above cases because of the availability of "conclusive DNA evidence," and that where paternity is established through "conclusive DNA evidence" nothing further should be required to establish heirship.[7]  We are mindful that the predecessor language of our section 633.222, dating back to the 1800s, was written at a time when paternity was difficult to prove, and "recognition" was a significant part of the proof necessary to establish heirship.  We also recognize, however, that the 1986 and 1994 amendments were approved by the legislature at times during which DNA testing had become a common method of providing evidence, if not conclusive proof, of paternity.  Nonetheless, the legislature did not amend the recognition clause of the statute, which has been judicially interpreted in the same manner for more than a hundred years.

Nowhere does section 633.222 indicate that a particularly strong showing of paternity is sufficient to negate the requirement of recognition.  The fact of paternity alone is insufficient under Iowa law to provide inheritance: a father's recognition of the relationship between himself and the biological child must justify the entitlement to inherit; mere genetic relationship is insufficient.[8]  Iowa

_____

[7] Jonathan further claims *Evjen*, *Abkes*, and *Pena*, the three cases decided after the 1986 amendment, required the claimant prove recognition because the evidence of paternity was inconclusive or unavailable.  This claim is incorrect.  In *Evjen* and *Pena*, the courts found sufficient evidence to establish paternity and insufficient evidence of recognition.  *Evjen*, 448 N.W.2d at 24; *Pena*, No. 12-0559, 2012 WL 5563116 at *1.  In *Abkes*, the administrative law judge accepted the state district court's determination that the claimant "narrowly carried" the burden of proving paternity, but found the claimant failed to prove recognition.  *Abkes*, 30 F. Supp. 2d at 1155.

[8] Mohr raises for the first time in her reply brief the argument that Jonathan failed to establish even paternity as an element of proof.  The district court addressed the question of paternity in the ruling on the motion for summary judgment and found there

Code section 633.3(5) further supports the conclusion that biology is not enough. It provides that the word "child," when used in the probate code, "includes an adopted child but does not include a grandchild or other more remote descendants, nor, except as provided in sections 633.221 [inheritance by a biological child from a mother] and 633.222, a biological child." Thus, we clearly must apply Iowa Code section 633.222, and may not simply find heirship upon a finding of paternity.

The district court found it was "bound" by the case law to find both paternity and recognition are required. Although we recognize the case law deviates from the plain language of the statute in interpreting the "or" to mean "and," we too are bound by this long-standing supreme court precedent. *See State v. Hastings*, 466 N.W.2d 697, 700 (Iowa Court. App. 1990) ("We are not at liberty to overturn Iowa Supreme Court precedent"). If this interpretation is to be overturned, it must be done by the supreme court. *Id.* Therefore, we also conclude establishing heirship under Iowa Code section 633.222 requires proof of both paternity and recognition; proof of paternity alone, however conclusive, is insufficient. We affirm on the cross-appeal.

## C. Who Bears the Burden Of Proof as to Heirship?

We next address the issues in Pamela's appeal from denial of the petition for declaratory judgment. Pamela contends the district court erred in finding (1) she bore the burden of proof in the declaratory judgment action; (2) the standard

---

was sufficient evidence of paternity, granting Jonathan summary judgment on that issue. Mohr never appealed or challenged that ruling until her reply brief on appeal. We will not consider issues first raised in a reply brief. *State v. Walker*, 574 N.W.2d 280, 288 (Iowa 1998). Therefore, we do not address it.

of proof was clear and convincing evidence; and (3) the evidence failed to meet the standard of proof.

With regard to who bore the burden of proof, the district court said:

> A declaratory judgment declares the rights, duties, status and or other legal relationship of the parties. *See* Iowa R. Civ. P. 1.1101. . . .
>
> The burden of proof in a declaratory judgment action is the same as in ordinary actions at law or suits in equity. . . the burden of proof is on the plaintiff to show that conditions exist to justify the court exercising its discretionary powers to grant declaratory relief. See <u>Gen. Cas. Co. of Wisconsin v. Hines</u>, 156 N.W.2d 118, 121 (Iowa 1968). Where the defendant denies the plaintiff's allegations, the plaintiff must then prove the proof of the allegations within his or her pleading. See <u>Gen. Cas. Co. of Wisconsin</u> at 742.
>
> . . . .
>
> As stated above, the burden of proof in a declaratory judgment is the same as in a typical action at law or equity. See <u>Owens v. Brownlie</u>, 610 N.W.2d 860, 866 (Iowa 2000). The plaintiff bringing the action has the burden of proof, even if a negative declaration is sought. <u>Owens</u> at 866
>
> The plaintiff in the present action argues the burden of proof should be on the Defendants in this matter. To support her claim, Petitioner provides several Iowa cases where the disputed heir was taxed with the burden of proof to prove they were the rightful heir. See [Abkes, Evjen, Pena, Robertson v. Campbell, Watson v. Richardson, <u>Craven v. Sellway</u>, 246 N.W.2d 821 (Iowa 1933); <u>Prior v. Singmaster</u>, 167 N.W.2d 538 (Iowa 1918)]. . . . The aforementioned cases all concern the disputed heir as the moving party. However, in the present case, the Court finds itself in the odd position where the moving party seeking declaratory action is not the contested heir. Rather, the Plaintiff, Pamela Mohr, is petitioning the Court to rule that Jonathan Langerman is <u>not</u> an heir to Jerry Dean Mohr's estate as he has already [been] acknowledged by the executor to be such an heir. Thus, Plaintiff, Pamela Mohr, has the burden of proving Jonathan Langerman cannot meet the elements to be considered an heir under Iowa Code section 633.222. Therefore, Plaintiff, Pamela Mohr, has the burden of proof to prove a negative declaration.

The district court later stated, "While this seems to be an uncommon way of deciding the issues at hand, this is what the declaratory judgment standards require."

Pamela renews her contention that she should not bear the burden of proof in this case. She cites again *Craven v. Selway*, 246 N.W.2d 821 (Iowa 1933)—a case where marital heirs to an estate brought a petition to quiet title against a biological heir. In that case, our supreme court stated the burden of proof was with the person claiming heirship. *Craven*, 246 N.W. at 822-23. In *Craven*, however, the contested biological heir brought his own action making a claim on the estate. *See id.* at 822. Thus, he properly bore the burden of proving his claim.

Pamela further argues the question of who bears the burden should not be based on who files with the court first. If the estate's personal representative had not listed Jonathan as an heir in the initial report and inventory, the burden would have been on Jonathan to prove heirship in a claim against the estate. Pamela also argues the district court gave improper weight to the listing of Jonathan as an heir of the estate. The Iowa probate code provides the personal representative of the estate shall file a report with the court containing, among other things, "Name, relationship, and post office address . . . of each heir if the decedent died intestate." Iowa Code § 633.361.

In a case that predates the adoption of the Iowa probate code, our supreme court said, "[I]n the absence of any showing to the contrary, [the inventory, including the list of heirs] is presumed to be correct." *Sutherland v.*

*Briggs*, 166 N.W. 477, 479 (Iowa 1918).  We have found no other Iowa cases citing that proposition.  The 1963 adoption of Iowa Code section 633.367, provides the inventory and appraisement "may be given in evidence in all proceedings, but shall not be conclusive and other evidence may be introduced to vary the effect thereof."  Thus, we conclude that under the current code provision, the probate inventory is not presumptively correct, but is evidence, the effect of which other evidence may vary.  In her declaratory judgment action, Pamela is attempting through the introduction of other evidence to change the effect of the inventory listing Jonathan as an heir.

The next question is who bears the burden to prove the asserted change. Pamela contends the burden should shift to Jonathan in the same way that the burden shifts to the nonmoving party in other common actions, although she cites no example within the context of an heirship contest.[9]  She argues this is appropriate "when such a shift is reasonable to ensure that the party with access to the necessary evidence carries the burden."  Pamela urges the court to shift

---

[9] As examples, Mohr cites the following:

> In employment discrimination claims, the burden shifts from the employee to show a prima facie case of discrimination, to the employer to show nondiscriminatory reasons for their actions, back to the employee to show nondiscriminatory reasons were merely a pretext for discriminatory behavior.  *Klein v. Dubuque Human Rights Comm'n*, 829 N.W.2d 190 (Iowa Ct. App. 2013) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)).

> False imprisonment charges require a shifting burden as the plaintiff first shows a warrantless arrest and the burden then shifts to the defendant to show a justification for the arrest.  *Children v. Burton*, 331 N.W.2d 673, 679 (Iowa 1983).  In contract law, when a person challenging a contract demonstrates a confidential relationship, the presumption of undue influence arises and the burden shifts to the other party to the contract to rebut that presumption.  *Jackson v. Schrader*, 676 N.W.2d 599, 605 (Iowa 2003).

the burden in this case also to "ensure[ ] that the issue before the court is affirmatively answered by evidence, or lack thereof" rather than by who brings the claim first.

Other than these arguments, Pamela adduces no authority within the context of an heirship contest to justify shifting the burden to Jonathan. Pamela initiated the action now before us, stating in her petition, "[T]he Petitioner requests the Court enter a judgment declaring that Jonathan Langerman is not an heir of Jerry Dean Mohr and is not entitled to inherit from the Estate of Jerry Dean Mohr." Because this is her prayer, the burden is on her to prove the allegations within the petition justifying a declaration by the court, even if this requires proving a negative declaration. *See Owens*, 610 N.W.2d at 866. Thus, we affirm the district court's ruling that Pamela, as the petitioner, bears the burden of proof.

### D.    What Is The Standard Of Proof For Showing Recognition?

A contested heir must show heirship by clear and convincing evidence. *Evjen*, 448 N.W.2d at 24. Pamela contends, if she does indeed bear the burden of proof for showing a lack of recognition, the court should not hold her to the same standard of proof as the contested heir. Rather, she proposes a preponderance-of-the-evidence standard as "a plausible standard to adopt" because it is the same standard required of a party making a claim against the estate. *See* Iowa Code § 633.10.

This argument again belies the nature of the action before the court. Pamela filed for a declaratory judgment regarding heirship, so she must be

bound by the standards guiding heirship determinations, even though she is seeking a negative declaration. *See Owens*, 610 N.W.2d at 866. This standard is clear and convincing evidence. Further, Pamela does not adduce adequate reasons for lowering the standard of proof in her case.

### E.     Was The Standard Met Here?

Based on the foregoing Pamela was required to show by clear and convincing evidence that Jerry did not recognize Jonathan.[10] Pamela contends on appeal that she met this burden. Recognition means "to admit the fact, truth or validity of a matter." *Evjen*, 448 N.W.2d at 25 (internal quotation omitted). In the context of heirship, it means the father admitted or acknowledged the paternity. *Id.* Recognition need not be universal or so general and public as to have been known by all. *Id.* At trial, the parties introduced numerous exhibits. The only witnesses were Pamela Mohr and Amy Langerman. The parties produced the following evidence:

Pamela testified she was married to Jerry for twenty-four years. They resided in Scottsdale, Arizona. After about nine years of marriage, he moved to Flagstaff, Arizona, to begin a new business. Pamela stayed in Scottsdale to manage their equine business there. Pamela and Jerry traveled back and forth for a few years. Pamela testified that they began to grow apart in the early 2000s and saw each other less frequently, but maintained phone contact. Pamela was

---

[10] Mohr asserts the district court erred in requiring her to show that Jerry did not recognize Jonathan. She asserts this was error and she needed to show only that Jonathan could not prove recognition by clear and convincing evidence, the standard Jonathan would have met had he made the original claim. She argues requiring her to prove non-recognition is a heightened burden.

aware Jerry was having affairs with other women. She maintained they remained "very, very, very close" in the last years of his life, and spoke often on the phone, until he died in August 2011. Pamela testified she asked Jerry if he had any children as a result of his affairs and he stated he did not. Prior to the paternity action being filed in March 2012, Pamela was not aware of Jerry having a child. She also was not aware until Jerry's death that he had been living with Beth Cairns for the previous ten or eleven years, or that Beth was a named beneficiary on his $1 million life insurance policy. Pamela and Jerry continued to file joint tax returns, and claimed no dependent children. Pamela testified Jerry did not provide any financial support to Jonathan or Amy Langerman. Jerry was, however, raising Beth Cairn's son, and named that child as a contingent beneficiary on his life insurance policy.

Amy Langerman testified that she and Jerry decided to have sex with the purpose of conceiving a child. Amy already had another child conceived in this manner, and Jerry offered to father a second child. Amy testified she saw Jerry occasionally during her pregnancy. When he visited, he would kiss her belly and speak to the baby. Amy testified, when consulting with a doctor about Amy's gestational health, Jerry stated, "My girlfriend and I are having a child." During a doctor's visit, Jerry told Amy to introduce him to the doctor as the baby's dad. Amy testified she had a high-risk pregnancy, and was ordered to be on bed rest after the twenty-sixth week of pregnancy. Jerry was not present when Jonathon was born on December 25, 1994. Amy testified he intended to be there but, because the birth occurred on Christmas day, obligations to Pamela prevented

him from attending. No father was listed on Jonathan's birth certificate,[11] and Jonathan bears his mother's last name.

Jerry moved to Flagstaff in mid-1996. For the first eighteen months or so of Jonathan's life, Amy and Jerry had no arrangement for financial support or for visitation. Amy testified Jerry offered to give her money, but she declined. Jerry visited occasionally when Jonathan was an infant and toddler. After he moved to Flagstaff, Jerry called occasionally and inquired after Jonathan, but did not see him again.

A few years later, Amy moved with her children to California. Over the years, Amy sent Jerry numerous pictures, Christmas cards, and Father's Day cards. On the occasion of Jonathan's bar mitzvah, she invited Jerry to attend and offered to introduce him to Jonathan so Jerry could get to know him. Shortly before his death, Jerry offered to help Amy pay for Jonathan's college expenses. When Amy questioned whether Pamela would be upset, Jerry indicated he would give Amy the money "under the table." Amy was not aware Jerry had died until several months had passed, and a mutual friend notified her. She then began proceedings in Arizona and Iowa to confirm paternity and heirship.

The district court found Pamela's testimony regarding her close relationship with Jerry was strongly contradicted by the fact that Pamela was unaware Jerry had cohabited with Beth Cairns for a decade. The court found, "Mohr's testimony concerning her relationship with Jerry Dean Mohr lacks

---

[11] A new certificate of live birth was issued on July 10, 2012, naming Jerry Dean Mohr as father.

credibility, and her assertions that he denied having children [are] not persuasive on the Court." With regard to Amy Langerman, the court found:

> Amy Langerman is credible as to the events leading up to Jonathan Langerman's conception and birth. She appears credible as to the circumstances of the relationship with Jerry Dean Mohr until they lost contact. . . . The Court lends less weight to her testimony concerning what occurred thereafter, including the time after Jerry Dean Mohr's death. Amy Langerman was not even aware of his death for several months thereafter.

In the absence of written recognition, "recognition must have been general and notorious." Iowa Code § 633.222. Our supreme court has explained that for a biological child to be considered an heir, "recognition need not be universal or so general and public as to have been known by all." *Evjen,* 448 N.W.2d at 25. "[R]ecognition is a mental process . . . made manifest by overt acts or speech." *Id.* Recognition may occur even though there are efforts to conceal the facts from some. *Id.* The district court found it was presented with very little evidence regarding Jerry's state of mind regarding Jonathan, particularly in the later years of his life when he was living with Beth Cairns and had very limited contact with either Pamela or Amy.

We too find the evidence adduced to support Pamela's assertion that Jerry did not recognize Jonathan is sparse. It appears Jerry took steps to conceal Jonathan's existence from Pamela. It is not surprising he was not forthcoming to his wife concerning a child he had fathered with another woman. He was also not forthcoming about his long-term living arrangement with Beth Cairns, nor about naming Cairns and her son as beneficiaries on his life insurance policy.

Jerry was not listed on the birth certificate as Jonathan's father.  Yet, according to Amy, Jerry was introduced to Jonathon's doctor as the father of the child, and in some other early circumstances, Jerry appeared to treat Jonathan as his child.  Jerry had no direct contact with Jonathan after Amy moved to California.  Later, however, according to Amy, Jerry offered to pay for Jonathan's college tuition.  We defer to the district court's findings that Amy was more credible than Pamela, and that Amy was more credible regarding circumstances prior to losing contact with Jerry.  We conclude Pamela has not carried her burden of proving by clear and convincing evidence that Jerry did not recognize Jonathan.

## IV.    CONCLUSION.

We conclude the district court correctly found Iowa law was applicable to the resolution of the issues here, and correctly determined that proof of both paternity and recognition are required to establish heirship under section 633.222.  Consequently, we affirm the partial denial of Jonathan's motion for summary judgment.

We further conclude the district court correctly determined Pamela had the burden of proving, by clear and convincing evidence, that Jerry did not recognize Jonathan, and did not err in concluding that Pamela failed to carry her burden. Consequently, we affirm the denial of her petition for declaratory judgment.

**AFFIRMED.**